UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------x
PATRICK ALLEN,

                Plaintiff,

  - against -

UNITED PARCEL SERVICE, INC.,

                Defendant.
---------------------------------------------------------x

MEMORANDUM AND ORDER

12 Civ. 02378 (ILG) (RER)

GLASSER, Senior United States District Judge:

Plaintiff has objected, pursuant to 28 U.S.C. § 636(b)(1) and Federal Rule of Civil Procedure 72(b), to the Report and Recommendation of Magistrate Judge Ramon E. Reyes, Jr. (Dkt. No. 26) (the "R&R"), dated October 25, 2013, recommending that the Court deny plaintiff's motion for leave to amend his complaint. For the reasons stated below, the Court adopts the R&R in its entirety.

## BACKGROUND

Patrick Allen filed a complaint against his former employer, United Parcel Service ("UPS"), in New York State court on March 31, 2012, for violating the New York State Human Rights Law ("NYSHRL"), N.Y. EXEC. §§ 290–301, and the New York City Human Rights Law ("NYCHRL"), N.Y.C. ADMIN. CODE §§ 8-101–131. Notice of Removal (Dkt. No. 1). He alleged that he worked for UPS from 1993 to 2009 as a "pre-loader," which involved sorting packages before they were loaded onto trucks. Id. He was terminated on October 29, 2009, after he reported a disabling work injury (that he does not describe in his complaint), because UPS concluded he had faked the injury.[1] Id.

---

[1] Although Allen alleges that he was placed on a "72 hour Notice of Discharge for Attendance" on October 29, 2009, he also alleges that he was terminated on an unspecified date in March 2010, when he attempted to return to work after apparently being on leave while recovering from his injury. This conflict leads the parties to disagree about when the proposed claim accrued. Plaintiff's Objection ("Pl.'s

1

UPS removed the action to this Court on May 11, 2012. Notice of Removal. On July 5, 2012, Judge Reyes entered a scheduling order establishing a deadline for amending pleadings of September 3, 2012. Scheduling Order (Dkt. No. 9). Discovery was originally scheduled to be completed by January 15, 2013, but the deadline was extended to April 15, 2013. Id.; Order dated January 10, 2013. On April 18, 2013, Allen's attorney asked for, and was granted, leave to withdraw due to a breakdown in his relationship with Allen. Order dated April 18, 2013. Allen's new attorney filed a notice of appearance on May 17, 2013. Notice of Appearance (Dkt. No. 16).

On May 28, 2013, Allen moved for leave to amend his complaint to add a claim of breach of a collective bargaining agreement ("CBA") pursuant to § 301 of the Labor Management Relations Act ("LMRA"), codified at 29 U.S.C. § 185.[2] Motion to Amend (Dkt. No. 17). UPS responded on June 6, 2013. ("Def.'s First Response") (Dkt. No. 19). Allen filed a new proposed amended complaint (confusingly filed as an "Amended Complaint") on June 13, 2013. ("Proposed Am. Compl.") (Dkt. No. 20). UPS filed a second "response" to address the new proposed amended complaint on June 20, 2013. ("Def.'s Second Response") (Dkt. No. 23). Allen then filed what he called a "motion to amend/correct/supplement," which is in substance a reply to UPS's responses, on June 25, 2013. ("Pl.'s Reply") (Dkt. No. 25).

Allen's proposed claim is based on allegations that UPS breached the CBA between his union and UPS by terminating his employment without giving him 72 hours' notice, assigning a union delegate, conducting a grievance hearing, or arbitrating

---

Objection") (Dkt. No. 32) at n.1. The court doesn't resolve the dispute because the length of the applicable limitations period disposes of the timeliness of Allen's claim regardless of which accrual date is correct.
[2] Allen also initially sought to add two claims under the Americans With Disabilities Act, but he abandoned those proposed claims during the pre-motion conference on June 26, 2013. R&R at 1 n.1.

his grievance.[3] Proposed Am. Compl. at ¶¶ 55–60. He also alleges that his union breached its duty to fairly represent him in the grievance proceedings by refusing to assign a union delegate, which, combined with UPS's actions, prevented him from exhausting the grievance process. Id. at ¶¶ 61–62.

This Court referred the motion to Judge Reyes for a report and recommendation. (Dkt. No. 24). In the R&R, Judge Reyes recommends denying Allen's motion for leave to amend because the proposed § 301 claim would be futile on account of being untimely and because Allen hasn't demonstrated good cause for seeking to amend his complaint several months after the deadline to do so passed. Allen filed an objection to the R&R on November 12, 2013.[4] ("Pl.'s Objection") (Dkt. No. 32). UPS filed a response on November 20, 2013. Defendant's Opposition ("Def.'s Opp'n") (Dkt. No. 33).

## DISCUSSION

### I. Timeliness of Objection

UPS asserts that Allen's objection, filed on November 12, was untimely and that he has accordingly waived review of the R&R. Def.'s Opp'n at 2–3. Parties have 14 days after service of an R&R to file objections. FED. R. CIV. P. 72(a), (b)(2). If an R&R is served electronically, as it was here, "3 days are added after the period would otherwise expire." FED. R. CIV. P. 6(d); accord Green v. City of New York, No. 05-CV-429, 2010 WL 148128, at *3 n.1 (E.D.N.Y. Jan. 14, 2010); Sembler v. Advanta Bank Corp., No. 07-CV-2493, 2008 WL 2965661, at *1 (E.D.N.Y. Aug. 1, 2008). The R&R was served

---

[3] Allen's allegations about the grievance process are confusing. He alleges that the CBA requires UPS to assign a union delegate for any grievance and conduct a hearing and arbitration, but it is unclear if a grievance must be filed before these duties are triggered, whose responsibility it is to file a grievance, and whether a grievance was filed here. Proposed Am. Compl. at ¶¶ 56, 58–60. He also alleges both that he did and did not receive 72 hours' notice of his termination. Id. at ¶ 58.
[4] In addition to the properly filed objection, Allen improperly filed a "Motion to Set Aside" the R&R. (Dkt. Nos. 27–31).

electronically on October 25. Fourteen days after October 25 was November 8, and three days after November 8 was November 11. Since November 11 was a legal holiday (Veterans' Day), Allen had until the next business day—November 12 —to file his objection. See FED. R. CIV. P. 6(a)(1)(C); LOCAL CIV. R. 6.4; Blessing v. Sirius XM Radio, Inc., 756 F. Supp. 2d 445, 452–53 (S.D.N.Y. 2010). His objection is thus timely and he has not waived further judicial review of the R&R.

**II. Standard of Review**

For a dispositive matter, the district court reviews de novo the parts of the R&R to which the parties object and reviews for clear error the parts of the R&R to which the parties do not object. FED. R. CIV. P. 72(b)(3); Integrity Elecs., Inc. v. Garden State Distribs., No. 09 Civ. 2367, 2012 WL 1041349, at *1 (E.D.N.Y. Mar. 28, 2012). For a non-dispositive matter, the district court reviews the R&R for clear error. FED. R. CIV. P. 72(a); Fielding v. Tollaksen, 510 F.3d 175, 178 (2d Cir. 2007). Authority is divided about whether a motion for leave to amend a complaint is a dispositive or non-dispositive matter. See Jean-Laurent v. Wilkerson, 461 F. App'x 18, 25 (2d Cir. 2012) (remanding after the district court treated a recommendation to partially deny motion to amend as non-dispositive); Fielding, 510 F.3d at 178 (stating in dicta that a motion to amend a complaint is non-dispositive); Klaper v. Cypress Hills Cemetery, No. 10-CV-1811, 2012 WL 959403, at *6 n.6 (E.D.N.Y. March 21, 2012) (explaining that the Second Circuit has not explicitly addressed this question and that some district courts have reviewed recommendations to deny a motion to amend as dispositive and to grant a motion as non-dispositive). In any event, whether reviewed de novo or for clear error, this Court would adopt the R&R. See Wilson v. City of New York, No. 06-CV-229, 2008 WL 1909212, at *3–4 (E.D.N.Y. Apr. 30, 2008) (deciding not to take a position on this

4

question because the court would adopt the R&R either way). The district court may accept, reject, or modify, in whole or in part, the R&R. FED. R. CIV. P. 72(a), (b)(3); Integrity Elecs., 2012 WL 1041349, at *1.

### III. Allen's Motion for Leave to Amend His Complaint

Federal Rule of Civil Procedure 15 instructs a Court to freely grant leave to amend a complaint. FED. R. CIV. P. 15(a)(2). Pursuant to Rule 15, however, a Court has discretion to deny a motion for leave to amend a complaint for, inter alia, futility of the amendment. McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 200–01 (2d Cir. 2007). An amendment is futile if the proposed claim could not withstand a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). Islamic Soc'y of Fire Dep't Pers. v. City of New York, 205 F. Supp. 2d 75, 80 (E.D.N.Y. 2002). When a motion for leave to amend a complaint is made after a scheduling order's deadline to do so has elapsed, as here, the Court must balance Rule 15(a)'s instruction to freely grant leave against Rule 16(b)'s instruction to not modify a scheduling order unless good cause is shown. FED. R. CIV. P. 16(b); Holmes v. Grubman, 568 F.3d 329, 334–35 (2d Cir. 2009); Bensinger v. Denbury Res., Inc., No. 10-CV-1917, 2013 WL 3353975, at *3 (E.D.N.Y. July 3, 2013). The good-cause inquiry turns on whether the moving party was diligent. Holmes, 568 F.3d at 335; Morales v. Cnty. of Suffolk, No. 10-CV-03686, 2013 WL 3388387, at *1 (E.D.N.Y. July 6, 2013).

### A. Rule 15 Analysis

Allen proposes a claim pursuant to § 301 of the LMRA, which provides a federal cause of action for breach of a CBA. 29 U.S.C. § 185; UAW v. Hoosier Cardinal Corp., 383 U.S. 696, 697 (1966). There are two types of § 301 claims. A pure § 301 claim is one that simply alleges that the employer breached the CBA. Id. at 705 n. 7. Before bringing

5

a pure § 301 claim, a party must exhaust the grievance process required by the CBA. Vaca v. Sipes, 386 U.S. 171, 184 (1967); Semper v. New York Methodist Hosp., 786 F. Supp. 2d 566, 585 (E.D.N.Y. 2011). A hybrid § 301 claim pairs a claim that the employer breached the CBA with a claim that the union's breach of its duty to fairly represent the employee prevented the employee from exhausting the grievance process. DelCostello v. Int'l Bhd. of Teamsters, 462 U.S. 151, 163–64 (1983); Carrion v. Enterprise Ass'n, 227 F.3d 29, 34 (2d Cir. 2000). A hybrid § 301 claim thus provides an avenue for a party who has not exhausted the grievance process. DelCostello, 462 U.S. at 163–64; Semper, 786 F. Supp. 2d at 585. The nature of the claim, and not who is sued, determines whether a § 301 claim is considered pure or hybrid. Carrion, 227 F.3d at 34; Doyle v. United Airlines, Inc., 914 F. Supp. 2d 325, 338 n.6 (E.D.N.Y. 2012).

Section 301 does not provide a statute of limitations, so courts have borrowed limitations periods from analogous claims. The differences between pure and hybrid § 301 claims have resulted in the borrowing of different limitations periods. In Hoosier, the Supreme Court concluded that the claim most analogous to a pure § 301 claim is breach of contract, reasoning that a pure § 301 claim "is essentially an action for damages caused by an alleged breach of an employer's obligation embodied in a collective bargaining agreement. Such an action closely resembles an action for breach of contract cognizable at common law." 383 U.S. at 704–05 & n.7. The CBA at issue in Hoosier did not provide a grievance process for disputes. Reed v. United Transp. Union, 488 U.S. 319, 329 n.5 (1989); McKee v. Transco Prod., Inc., 874 F.2d 83, 88 (2d Cir. 1989). In New York, the limitations period for breach-of-contract actions is six years. N.Y. C.P.L.R. § 213(2).

The Supreme Court distinguished hybrid § 301 claims in DelCostello, borrowing instead the six-month limitations period provided by § 10(b) of the National Labor Relations Act ("NLRA"), codified at 29 U.S.C. § 160, for claims of unfair labor practices. 462 U.S. at 171. The court explained that a hybrid claim is "not a straightforward breach-of-contract suit under § 301, as was Hoosier, but a hybrid § 301/fair representation claim, amounting to a direct challenge to the private settlement of disputes under the collective-bargaining agreement." Id. at 165 (citations and quotations omitted). The Court reasoned that hybrid § 301 and unfair-labor-practices claims concern similar wrongdoing by unions and employers and that both concern a balancing between "the national interests in stable bargaining relationships and finality of private settlements, and an employee's interest in setting aside what he views as an unjust settlement under the collective-bargaining system." Id. at 170–71 (quoting United Parcel Serv., Inc. v. Mitchell, 451 U.S. 56, 70–71 (1981) (Stewart, J., concurring)).

Allen objects to Judge Reyes's conclusion that his proposed § 301 claim is a "hybrid" § 301 claim that is subject to a six-month limitations period rather than a "pure" § 301 claim that is subject to a six-year limitations period. Pl.'s Objection at 4–7. He argues that DelCostello does not control here because he has alleged that his failure to exhaust the grievance process is excused not by his union's failures, but by his employer's repudiation of the grievance process, which is another basis for excusing a failure to exhaust. Vaca, 386 U.S. at 185 ("An obvious situation in which the employee should not be limited to the exclusive remedial procedures established by the contract occurs when the conduct of the employer amounts to a repudiation of those contractual procedures."); Abdelmesih v. Waldorf-Astoria, 149 L.R.R.M. 2937, at *3 (S.D.N.Y. 1995) (stating that an employer's repudiation of the grievance process is an exception to the

exhaustion requirement). Allen primarily relies on three out-of-circuit cases, each concluding that a § 301 claim is pure if the failure to exhaust the grievance process is the result of an employer's repudiation of the grievance process, rather than a union's breach of its duty of fair representation. Cephas v. MVM, Inc., 520 F.3d 480 (D.C. Cir. 2008); Cabarga Cruz v. Fundacion Educativa Ana G. Mendez, Inc., 822 F.2d 188 (1st Cir. 1987); Garcia v. Eidal Int'l Corp., 808 F.2d 717 (10th Cir. 1986).

Allen's argument fails for a number of reasons. First, Allen did not present this argument or case law to Judge Reyes, so this Court need not consider it. A district court ordinarily will not consider new arguments, evidence, or case law that could have been but were not presented to the magistrate judge. Kruger v. Virgin Atlantic Airways, Ltd., No. 11-CV-2954, 2013 WL 5502866, at *3 (E.D.N.Y. Sept. 30, 2013); Kennedy v. Adamo, No. 1:02CV01776, 2006 WL 3704784, at *1 (E.D.N.Y. Sept. 1, 2006). In his motion papers, Allen did no more than conclusorily state that he "intends to bring a 'pure' breach of contract suit under Section 301, as opposed to a 'hybrid' suit" and that New York's six-year statute of limitations for breach of contract applies. Motion to Amend at 2 & n.2; Pl.'s Reply at 2. He did not cite any of the out-of-circuit cases he now cites, nor did he argue that his case was distinguishable from DelCostello.[5]

Second, he fails to account for controlling Second Circuit case law. The Second Circuit, applying DelCostello, has twice concluded that a § 301 claim is necessarily a hybrid claim if the CBA provides for a grievance process. United Auto., Aerospace &

---

[5] Allen presents such a different argument now that he refuses to even acknowledge his allegations that the union breached its duty of fair representation. In his objection, Allen says that he "is not alleging in his Proposed Second Amended Complaint that the Union acted in a discriminatory, arbitrary or bad faith manner." Pl.'s Objection at 5. But he alleges in his proposed amended complaint that "the Union breached its duty and the CBA by failing to provide Plaintiff with fair representation," and case law defines fair representation as serving union members in good faith, and without discrimination, hostility, or arbitrariness. Proposed Am. Compl. at ¶¶ 61–62. DelCostello, 462 U.S. at 164 n.14.

Agric. Implement Workers v. R.E. Dietz Co., 996 F.2d 592 (2d Cir. 1993); McKee v. Transco Products, Inc., 874 F.2d 83 (2d Cir. 1989). In McKee, two employees alleged they were terminated without cause, in violation of the CBA, and that the union did not adequately press their grievances. 874 F.2d at 84. The plaintiffs argued that DelCostello did not control their claim because their CBA did not require them to grieve their complaint. Id. at 87. The Court held that the defendant had adequately shown that the CBA did require plaintiffs to grieve their claim, and went on to explain that the existence of a grievance process distinguished the case from Hoosier: "Where an agreement has a private dispute resolution mechanism, an action for breach of that agreement is less analogous to a common law breach of contract action than was the agreement in Hoosier." Id. at 88.

Dietz concerned a union's claim that the employer had violated the CBA by refusing to pay employees for leftover vacation leave. 996 F.2d at 594. The employees had not pursued the grievance process because their employer said that it would not participate. Id. Invoking McKee, the Court explained that "the mere presence of an arbitration clause is sufficient to render an employee's claim a hybrid claim and subject it to the six-month statute of limitations" and that the employer's repudiation of the grievance process "does not affect the statute of limitations." Id. at 596. The Court reasoned that the mere availability of a grievance process "implicates the federal interest in prompt, private dispute resolution in labor cases." Id. at n.2. Here, Allen's allegations make clear that the CBA provided a grievance process. Proposed Am. Compl. at ¶¶ 56, 58–62. Under McKee and Dietz, his claim is thus hybrid, regardless of whether his employer prevented him from exhausting the grievance procedures.

9

And third, two of the three out-of-circuit cases that Allen relies upon are distinguishable because they involved only claims of employer wrongdoing and not claims of union wrongdoing. In Cabarga Cruz, the First Circuit held that a § 301 claim was pure where a failure to exhaust grievance procedures was excused by the employer's repudiation of those procedures. 822 F.2d at 190–92. But this holding relied on the fact that the employer had "specifically withdrawn its assertion that the union handled Dr. Cabarga's grievance improperly." 822 F.2d at 192. In Cephas, the Circuit for the District of Columbia held that a claim that was not subject to a grievance process was a pure § 301 claim. 520 F.3d at 489. The Court reasoned that "Because Cephas's claim could not have been processed through the grievance procedure in the CBA, it follows his case does not depend upon his union having breached its [duty of fair representation]." 520 F.3d at 489. Garcia is the one out-of-circuit case that is not distinguishable. In that case, the Tenth Circuit held that a § 301 claim was a pure one where the plaintiff alleged that his employer had unilaterally repudiated the grievance process and the union had acquiesced. Garcia, 808 F.2d at 721 ("A defendant employer should not be permitted to characterize as a 'hybrid action' what is essentially a contractual claim simply because the union has acquiesced in the breach."). But, regardless of Garcia's similarity to this case, the fact remains that Allen did not cite Garcia in his arguments to Judge Reyes and that binding Second Circuit case law compels the conclusion that Allen's § 301 claim is hybrid.

As Judge Reyes correctly concluded that Allen's proposed claim is hybrid, a six-month limitations period applies to the proposed claim. 29 U.S.C. § 160(b). Even if this Court presumes that the claim accrued in March 2010 (when Allen says he was fired) and that the claim relates back to Allen's March 31, 2012, complaint, see FED. R. CIV. P.

15(c), the claim is untimely. The claim is consequently futile. See Grace v. Rosenstock, 228 F.3d 40, 53 (2d Cir. 2000) ("Amendment would likely be futile if, for example, the claims the plaintiff sought to add would be barred by the applicable statute of limitations.").

**B. Rule 16 Analysis**

Allen does not object to Judge Reyes's conclusion that he failed to show good cause for the tardiness of his motion to amend the complaint, which he filed about eight months after the September 3, 2012, deadline had elapsed. R&R at 6–7.

Judge Reyes's conclusion is not clearly erroneous. Allen did not in any of his motion papers acknowledge that the deadline for amending the complaint had passed, cite Rule 16(b), or argue that he had been diligent. Moreover, Allen knew of the factual basis for his proposed § 301 claim at the time those events transpired,[6] long before the September 3, 2012, deadline. See Parker v. Columbia Pictures Indus., 204 F.3d 326, 340–41 (2d Cir. 2000) (concluding that party wasn't diligent where he knew of factual basis for claim before deadline); Enzymotec Ltd. V. NBTY, Inc., 754 F. Supp. 2d 527, 536 (E.D.N.Y. 2010) ("[T]he good cause standard is not satisfied when the proposed amendment rests on information 'that the party knew, or should have known, in advance of the deadline.'").

In sum, Judge Reyes did not clearly err in concluding that Allen failed to show good cause under Rule 16(b).

---

[6] As mentioned above, the parties dispute when Allen was actually terminated. Whether he was terminated in October 2009 or March 2010, it's clear that Allen knew of the basis for his § 301 claim before the deadline to amend his complaint elapsed.

## CONCLUSION

For all of the foregoing reasons, the R&R is hereby adopted. Allen's motion for leave to amend his complaint is DENIED.

SO ORDERED.

Dated: Brooklyn, New York
December 19, 2013

/s/
I. Leo Glasser
Senior United States District Judge